IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | | |
|---|---|---|
| SHERRELL L. COBURN, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 05-6270-KI |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

KATHRYN TASSINARI
MARK MANNING
474 Willamette Street, Suite 200
Eugene, OR 97401

      Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

DAVID J. BURDETT
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

      Attorneys for Defendant

KING, District Judge:

Plaintiff Sherrell Coburn seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383©). The Commissioner's final decision is affirmed.

## BACKGROUND

Born in 1955, Coburn earned a GED and in 1987 completed an Associate's degree in accounting. Tr. 69, 88, 492.[1] In 2001 Coburn returned to college to pursue a second Associate's degree in an Office Assistant program. Tr. 301 - 304. Between 1992 and 2001 Coburn worked as a tax return checker, telephone maintenance dispatcher, telephone line assigner, telephone sales person, and telephone operator. Tr. 83.

Coburn applied for DIB and SSI on December 8, 2001. Tr. 69 - 71. She alleges disability since September 2000 due to "dizzy spells, anxiety, depression, panic attacks, uncontrollable anger and violent outbursts, crying, unable to handle daily responsibilities, " a broken ankle, and difficulty walking. Tr. 82. After Coburn's hearing before an Administrative Law Judge ("ALJ"), the ALJ found Coburn "not entirely credible" regarding her impairments and limitations. Tr. 22. The ALJ found that Coburn could work as an office worker, document preparer, and patcher. Tr. 23. The Appeals Council denied review of the ALJ's decision, making the ALJ's decision final. Tr. 8 - 10. Coburn seeks review of this finding.

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on January 5, 2005 (Docket #8).

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520, 516.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Coburn challenges the ALJ's evaluation of the evidence and his conclusions at step four.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§404.1520(4)(iii), 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e), Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform work in the national economy at step five.

If proceedings reach step five, the Commissioner must determine if the claimant is capable

of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Id.* If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g), 416.920(g).

## THE ALJ'S FINDINGS

The ALJ found that Coburn's "statements concerning her impairments and limitations are not entirely credible." Tr. 22. The ALJ found Coburn's ability to work limited by her "status-post right ankle fracture," depressive disorder, and anxiety with panic features. Tr. 22. The ALJ evaluated Coburn's RFC:

> The claimant retains the residual functional capacity to lift and carry up to 20 pounds on occasion and 10 pounds frequently. She can sit for 6 hours in an 8-hour workday, and stand/walk 2 hours in a workday. She can occasionally kneel, crouch, crawl, and climb stairs and ladders. She cannot climb ropes and scaffolds. She should avoid concentrated exposure to pulmonary irritants. The claimant can understand complex instructions but she has moderate limitations in her ability to carry out detailed instructions and to work in proximity to others. She should not have close or frequent interaction with the general public.

Tr. 22.

Relying upon VE testimony, the ALJ alternatively found at step five that Coburn could work as an office worker, document preparer, and patcher. Tr. 23, 513 - 514. Accordingly, the ALJ determined Coburn was not disabled under the Act at any time through the date of his decision. Tr.

23.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the ALJ's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986)). The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). In reviewing a credibility finding, the reviewing court must consider whether the Commissioner provided "clear and convincing reasons" for finding a claimant not credible. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). This court looks for clear and convincing reasons in reviewing rejection of an uncontradicted treating physician's opinion. This court also looks for "clear and convincing" reasons in reviewing rejection of an uncontradicted examining physician's testimony. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Coburn contends the ALJ failed to accurately assess her RFC because the ALJ improperly discredited Coburn's testimony and improperly considered opinions of a treating psychiatrist and examining physician.

## I.      Coburn's Credibility

The ALJ's reasoning for suspecting Coburn's credibility is based upon inconsistencies in Coburn's testimony and inconsistencies between Coburn's daily activities and her alleged disability. Tr. 19.

### a.      Credibility Analysis

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  In making credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  *Id*.

### b.      Failure to Seek Treatment

The ALJ noted that Coburn did not seek regular treatment for her alleged mental impairments. Coburn suggested this was due to restricted finances.  Tr. 504-506. Inability to afford treatment is an acceptable reason for not seeking treatment. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).  However, Coburn also stated that Telew "dropped her" as a patient due to numerous cancelled appointments.  Tr. 506.  Coburn suggested she cancelled appointments due to anxiety.  *Id*. However, this statement contradicts Telew's notes which do not suggest an anxiety disorder.  Tr. 314 - 317, 412 - 413, 417.  The ALJ reasonably suggested Coburn failed to seek treatment. *Batson*, 359

F.3d at 1193.

**c.      Inconsistent Statements and Activities**

The ALJ also based his credibility finding upon discrepancies between Coburn's alleged limitations and her reported activities. Tr. 20.  The ALJ noted that Coburn attended Lane Community College throughout the period in question and cared for her adult disabled daughter.  *Id.*   The ALJ also noted that Coburn applied for unemployment benefits and was discharged from vocational rehabilitation services during the period in question.  *Id.*

**1.      *College Attendance***

The ALJ cited Coburn's attendance and participation in community college.  Tr. 19.  Lane County Community College records show that Coburn was enrolled in two to four classes per term for the period between June 2001 and May 2004.  Tr. 301 - 304.   This is the period during which Coburn testified that she could not leave her house.  Tr. 475 - 477, 486.  The ALJ noted that this academic record is inconsistent with both Coburn's reported inability to leave the house and her reported concentration difficulties.  Tr. 19.

Coburn suggests her attendance is consistent with application for benefits because she was enrolled for one to six credits during between Winter term 2002 and Summer term 2003.  Plaintiff's Opening Brief, 15.  In support of this proposition, Coburn cites at least five failed classes.  Plaintiff's Opening Brief, 15-16.  Lane County Community College  show that Cobrun failed two, not five classes.  Tr. 303-304.  The ALJ considered that failed classes could indicate an inability to concentrate,  but did not find that her grades necessarily linked to her alleged impairment.  Tr. 19 - 20.  The ALJ specifically noted that Coburn's grades are inconsistent, and that her best grades were

in accounting classes.  *Id.*

Though a claimant is not required to "vegetate in a dark room," substantial daily activity may be construed as similar to gainful employment.  *Orteza*, 50 F.3d at 750; *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  This court will not overturn inferences reasonably drawn.  *Batson*, 359 F.3d at 1193.

### 2.      *Other Substantial Daily Activity*

The ALJ noted that Coburn testified that caring for her adult disabled daughter was a significant burden.  Tr. 20, 484.  Coburn suggests that childcare is not equivalent to substantial gainful activity.  Plaintiff's Opening Brief, 20.  However, substantial daily activity such as caring for a disabled child may be construed as similar to gainful employment.  *Orteza*, 50 F.3d at 750.  Again, this court will not overturn inferences reasonably drawn.  *Batson*, 359 F.3d at 1193.

### 3.      *Coburn's Unemployment Application*

The ALJ noted that Coburn collected unemployment benefits during the period she alleged disability.  Tr. 20.  The ALJ suggested this demonstrated an inconsistent representation, as Coburn held herself "fit for work" while simultaneously claiming she was disabled.  Tr. 20.

Coburn argues that "a claimant is disabled if the claimant cannot work on a "regular and continuing" basis, which means 8 hours a day, 5 days a week."  Plaintiff's Opening Brief, 18.  Coburn cites 20 C.F.R §§ 404.1512(a), 404.1545(b), and Social Security Ruling (SSR) 96-8p in support of this "8 hours a day, 5 days a week" standard.  These cites do not support such a blanket standard: § 404.1512(a) addresses evidence used to show disability or blindness.  § 404.1545(b) addresses a "regular and continuing" basis for work activity but makes no reference to the number

of hours or days per week a claimant may work. SSR 96-8p addresses RFC calculations. The ruling

states that a "regular and continuing basis" generally means 8 hours a day, 5 days a week, but also

notes:

> The ability to work 8 hours a day for 5 days a week is not always
> required when evaluating an individual's ability to do past relevant
> work at step 4 of the sequential evaluation process. Part-time work
> that was substantial gainful activity, performed within the past 15
> years, and lasted long enough for the person to learn to do it
> constitutes past relevant work, and an individual who retains the RFC
> to perform such work must not be found disabled.
> SSR-96-8p n.2 (available at 1996 WL 374184).

Therefore, a claimant may be found to be performing substantial gainful activity (SGA) while

working part time. 20 C.F.R. § 404.1472(a); *Katz v. Secretary of Health and Human Services*, 972

F.2d 290, 292 (9th Cir. 1992). If Coburn held herself able to work part time under Oregon

unemployment regulations, she also held herself able to perform SGA. While it is possible Coburn

would not have achieved SGA-level earnings at part time work, this court will uphold inferences

reasonably drawn by the ALJ. *Batson*, 359 F.3d at 1193. If two interpretations are plausible, this

court must affirm the ALJ's interpretation of the evidence. *Magallanes*, 881 F.2d at 750.

### 4.    *Department of Vocational Rehabilitation Records*

The ALJ noted that Coburn's Department of Vocational Rehabilitation (DVR) file contained

notes suggesting Coburn claimed health impairments for secondary gain. Tr. 20. Coburn suggests

these notes support her application for disability. In August 2003 Coburn's DVR counselor wrote:

> Client has been using school loans to live off for sometime. She is
> unable to complete a term successfully even taking 6 online credits.
> Client has not followed through with agreed upon activities, i.e.
> monthly reports, end of term grades, dropping classes, illness, etc.
> She states that she is interested in a state job, but does not work at

9 - OPINION AND ORDER

getting one.  She refused short term computer training to bring skills to competition level for employment and has been frank that she is not able to get by financially without school money and has no other choice than attending school because she was turned down by social security disability.  Shortly after plan was written and signed by client she stated that she had fibromyalgia and could only attend minimal classes which conflicted with the plan.  She has been unable to complete school by the end of the date of the plan taking 6 credits a term, and she continues to drop classes each term.  Client dropped all classes Spring 03 without notifying [vocational counselor] . . . Client has made it clear she would really like to have Social Security and has been turned down several times.  If client applies for VRD again [vocational counselor] recommends thorough investigation of client motivation.
Tr. 210 - 211.

The ALJ's interpretation of these notes stated that "in light of the claimant's ability to do well at school when she wants to, the DVR report indicates that the claimant is motivated to a degree by an issue of secondary gain.  This supports possible malingering."  Tr.20.

Generally, this court does not sustain inference of secondary gain.  By definition, application for disability insurance is an application for financial assistance.  If desire or expectation of obtaining benefits were sufficient to discredit a claimant, no claimant would be found credible.  *Ratto v. Secretary of Health and Human Services*, 839 F. Supp. 1415 at 1428 - 29 (D. Oregon 1993).

However, an ALJ may consider a claimant's work history in construing his credibility findings.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  Coburn's failure to follow through with DVR obligations, refusal of training to remain competitive, and dropped classes support the ALJ's inference of malingering.  This court will not overturn such inferences reasonably drawn.  *Batson*, 359 F.3d at 1193.

## II.    Medical Source Statements

Coburn contends the ALJ improperly evaluated the opinions of treating psychiatrist Dr. Telew and examining physician Dr. Weller.

**a. Treating Psychiatrist Dr. Telew**

Coburn suggests the ALJ failed to give clear and convincing reasons for rejecting the Dr. Telew's opinion.   Plaintiff's Opening Brief, 13.    Coburn also suggests Telew's report is uncontradicted and thus entitled to controlling weight. *Id.*  Telew treated Coburn between October 2000 and June 2004.  Tr. 314 - 317, 412 - 413.  On June 14, 2004 Telew endorsed a "marked restriction" on  a check-off form submitted by Coburn's counsel, but provided no clarification or explanation for this endorsement.  Tr. 415.

The ALJ noted Telew's opinion, but assigned "Dr. Telew's discussion of the claimant's disability" little weight.  Tr. 19.  Telew's notes do not support the level of impairment Coburn suggests.  Between December 2000 and June 2004 Telew diagnosed dysthymia,[2] mild obsessive compulsive disorder (OCD), polysubstance abuse and borderline personality disorder.  Tr.  314 - 316,  412 - 413, 417.  Telew made no reference to major depressive disorder or more than "mild" OCD. *Id.*

In April 2004 Telew wrote "ok for disability" but did not elaborate.  Tr. 412.  The purpose of Telew's notes is irrelevant; the ALJ may look to a physician's notes for support of a physician's opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  Because Telew's notes offer no explanation for his endorsement of listing-level impairment, the ALJ appropriately accorded the

---

[2]  The major feature of Dysthymic Disorder is a chronically depressed mood.  However, in order to find a diagnosis of Dysthymic Disorder, the clinician must also find that no Major Depressive Episode has been present during the first two years of the disturbance.  American Psychiatric Association, *Diagnostic and Statistical Manual*, 376, 380 (4th ed. 2000).

June 2004 form little weight.  *Id.*

Coburn also suggests Dr. Telew's records are incomplete due to her restricted finances. Plaintiff's Opening Brief, 15.  As noted above, inability to afford treatment is an acceptable reason for not seeking treatment.  *Gamble*, 68 F.3d at 321.  This reason for dismissing Telew's opinion is not sustained, though Coburn's restricted finances do not suggest Telew would have found greater impairment had she visited him more frequently.

Coburn finally suggests the ALJ has a duty to re-contact Telew if his notes are "inadequate" to support her position.  Plaintiff's Opening Brief, 14.  Plaintiff bears the burden of establishing disability.  *Bayliss*, 427 F.3d at 1217.  The ALJ has a duty to re-contact a physician, or develop the record, when ambiguities arise.  *Id.*  Here, the ALJ reviewed Telew's notes and appropriately found Telew's June 2004 endorsement inconsistent with Telew's notes.  An ALJ may appropriately consider such  inconsistencies in evaluating an opinion.  *Bayliss*, 427 F.3d at 1216.  An ALJ need not accept a physician's opinion that is brief, conclusory, and unsupported by clinical findings.  *Id.*

Coburn states that the agency should have ordered a consultative exam if it found Telew's opinion inadequate.  Plaintiff's Opening Brief, 15.  The agency did order a consultative examination. Tr. 364 - 369.  The examining physician, Dr. Sjodin, does not confirm that Telew's notes are "uncontradicted."  Tr. 364 - 369.  Sjodin noted Coburn's tearful presentation and diagnosed major depression.  Sjodin made no reference to obsessive-compulsive disorder or a personality disorder. Tr. 364 - 369.  Sjodin did not suggest Coburn experienced listing-level impairment, finding her concentration, persistence and pace adequate secondary to her poverty of speech. Tr. 368.  Contrary to Coburn's submission, the evidence is not presently "consistently in favor" of disability.  Plaintiff's

12 - OPINION AND ORDER

Reply Brief, 2.  Telew's opinion will not be credited.  *Lewis v. Apfel*, 236 F.3d 503, 514-515 (9th Cir. 2001).

### b.  Examining Physician Dr. Weller

Coburn suggests the ALJ improperly failed to fully credit examining physician Dr. Weller's opinion.  Weller is an examining physician specializing in rehabilitative medicine.  Tr. 371.  Weller found chronic low back pain and a "probable diagnosis" of fibromyalgia.  Tr. 376.  Weller also found residual weakness in Coburn's left ankle, secondary to her fracture history, a history of left knee "effusion and pain," and possible carpal tunnel syndrome.  Tr. 376.  Weller made no disability finding, noting only that Coburn could not walk far, should not perform repetitive manual tasks, and that she should be able to change positions frequently if needed.  Tr. 376 - 377.

The ALJ considered Weller's opinion, giving her report "some weight."  Tr. 19.  The ALJ credited Weller's finding regarding Coburn's limited range of motion, residual weakness and numbness of the right ankle, and left knee effusion with associated joint pain.  Tr. 19.  The ALJ found Weller's diagnoses of carpal tunnel syndrome and fibromyalgia inconsistent with other evidence in the record.  Tr. 19.  He also found Weller's assessment "not entirely consistent" with Coburn's reported daily activities.  Tr. 19.

Cobrun submits that the ALJ must identify "clear and convincing" reasons for rejecting the uncontroverted opinion of an examining physician.  Plaintiff's Opening Brief, 17.  Weller's opinion is not uncontroverted.  Coburn's treating physician between November 1998 and August 2001, Dr. Buchanan,  found no suggestion of fibromyalgia. Tr. 349 - 359.   Nor did Buchanan suggest carpal tunnel syndrome.  *Id.*  Coburn's treating orthopedist, Dr. Walton, did not suggest fibromyalgia.  Tr.

340 - 346.  Coburn's records at Lane County Community College health center, dated April and May

2002, and May and June 2004, also make no suggestion of carpal tunnel syndrome or fibromyalgia.

Tr. 419 - 424.

Coburn suggests Weller's opinion is inconsistent with orthopedist Walton's because Walton's

review of Coburn was restricted to her ankle fracture.  Plaintiff's Reply Brief, 4.  This is true.

However, the ALJ is only required to provide "specific, legitimate" reasons for rejecting the opinion

of an examining physician.  *Thomas*, 278 F.3d at 957.  Here, the ALJ appropriately found  Weller's

diagnoses inconsistent with Coburn's complaints and other medical evidence, as well as Coburn's

daily activities discussed above.  *Id.*

Even if credited, Weller's opinion does not establish disability.  Coburn suggests this court

should remand for electodiagnostic studies of Coburn's potential carpal tunnel syndrome.  Plaintiff's

Opening Brief, 17.  Such remand is appropriate when sufficient ambiguity arises, though the ALJ

does not have a duty to re-contact an examining physician.  *Bayliss*, 427 F.3d at 1217, *Thomas*, 278

F.3d at 959.  Here, the ALJ appropriately identified conflicts in the record and evaluated Weller's

opinion.  Remand crediting a physician's opinion is appropriate only when the evidence already

favors the claimant.  *Lewis*, 236 F.3d at 514 - 515.  This is not presently the case.  The rejected

portions of Weller's report will not be credited.

## CONCLUSION

The Commissioner's decision that Coburn did not suffer from disability and is not entitled

to benefits under Title II of the Social Security Act is based upon correct legal standards and

supported by substantial evidence.  The Commissioner's decision is AFFIRMED and the case is

dismissed.

IT IS SO ORDERED.

      Dated this ___28th___ day of August, 2006.

                                       _/s/ Garr M. King_____
                                         Garr M. King
                                         United States District Judge

15 - OPINION AND ORDER